The Union National Bank of Pittsburgh, Appellant, *v.* Redevelopment Authority of the City of New Kensington, Appellee.

Argued May 9, 1974, before Judges CRUMLISH, JR., WILKINSON, JR. and BLATT, sitting as a panel of three.

*John T. Crum,* with him *Crum and Crum,* for appellant.

No appearance for appellee.

OPINION BY JUDGE WILKINSON, June 4, 1974:

The matter for disposition in this case is the propriety of the schedule filed by a master appointed under

the provisions of Section 521 of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P. L. 84, 26 P.S. §1-521, for disposition of eminent domain damages among lienholders. The total amount of the claims of lienholders was in excess of the amount awarded in damages and, therefore, the order in which the liens were to be paid was critical.

Section 521 of the Eminent Domain Code provides, in pertinent part:

"Distribution of Damages; Liens

". . . It shall be the obligation of the condemnor to properly distribute the damages. If the condemnor is unable to determine proper distribution of the damages, it may, without payment into court, petition the court to distribute the damages and shall furnish the court with a schedule of proposed distribution.

"Notice of the filing of the petition and schedule of proposed distribution shall be given to all condemnees, mortgagees, judgment creditors and other lienholders, as shown in the proposed schedule, in such manner as the court may by general rule or special order direct. The court may hear the matter or may appoint a master to hear and report or may order any issue tried by the court and jury as may appear proper under all the circumstances. The court shall thereafter enter an order of distribution of the fund."

The comment of the Joint State Government Commission's 1964 Report stated: ". . . The procedure for distribution is new. Since there will no longer be any requirement under this act that liens be set forth in the petition for viewers or that findings be made as to lienholders and their priority, some procedure is necessary in order that proper distribution be made. It is contemplated that in most cases the condemnor will have obtained the necessary information through his title search and that distribution can safely be made on the basis of such search. Where there is any question as

to lienholders or priority, this section permits payment to be made at the direction of the court, thus relieving the condemnor from liability."

Appellant is the holder of what would appear to be a first mortgage in the "face amount" of $40,000.00. In its exceptions to the master's report, appellant alleges that the principal amount due is $39,571.21. The master awarded $40,000.00. The appellant asserts that as of April 1, 1973 (the master's report was filed March 7, 1973), this did not include $7,287.49 unpaid interest, late charges of $310.00, or attorney's commissions as provided in the mortgage.[1]

The master does not give any explanation or reason why he did not recommend payment of the full amount due, there being no contest on the amount of the claim. He merely states "the master is of the opinion that the sum of $40,000.00 should be allowed the Union National Bank." The statutes prior to the Eminent Domain Code and the cases are collected and discussed in Snitzer, Pennsylvania Eminent Domain, page 260 et seq. (1965). If there were any doubt as to the meaning of Section 521 when it states, "said liens shall be paid out of the damages in order of priority before any payment thereof to the condemnee," it would be removed by a reading of the law prior to the adoption of the Code which provided the same.

When, as here, the amount of damages awarded is insufficient to pay all the claimants, and there is no contest as to the amount legally due and owing in each instance, the only function to be performed by the court, or by the master if one is appointed, is the order of priority, i.e., seniority, of the liens.

Accordingly, the order of the court below, dated July 5, 1973, is reversed and the matter remanded for the

---

[1] It seems appropriate to note that on appeal, appellant asserts a right to 10% attorney's commissions only on that amount which is ultimately collected above the $40,000.00 awarded.

court, or for the master if the court so desires, to establish a schedule of distribution which will pay each claimant the full amount legally due and owing in the order of priority to the extent of the funds available.